FROTHINGHAM v. BENSEN et al.

(Supreme Court, Trial Term, Albany County. March, 1897.)

1. MUNICIPAL CORPORATIONS—LIMITATION OF USE OF WATER METERS.

The placing of water meters in supply pipes to some, but not all, buildings in a city, is not a violation of Laws 1892, c. 304, § 5, which requires the board of water commissioners to establish a uniform scale of water rates, where the commissioners passed a by-law providing that no more than 150 gallons of water a day should be used in any building without a permit, and that, if more than that quantity was used without such permit, the occupant of the building should be liable to a penalty.

2. SAME—POWER OF WATER COMPANY—CUTTING OFF WATER.

The owner of two buildings, who took his water supply for both from one pipe, is not entitled to make connections with the street main for one of the houses after paying his annual water tax on it, where he refused to pay a special water rate for extra water supplied the buildings through such pipe, in consequence of which refusal the board of water commissioners, in accordance with their rules, shut off the water by virtue of Laws 1892, c. 304, giving them the authority theretofore exercised by the board of water commissioners of the city of Albany, who, under Laws 1850, c. 235, § 29, were authorized to make such regulations as they deemed advisable, and to enforce them by cutting off the supply of water from any one violating them.

Action by Mary Frothingham against Albert V. Bensen and others, water commissioners, to compel defendants to grant plaintiff permission to make connection with a water main in John street:

for the use of the premises No. 42 John street, and for damages against defendants or the city of Albany by reason of defendants' refusal to grant such permit.    Dismissed.

Worthington Frothingham, for plaintiff.

John A. Delehanty and James J. Farren, for defendants.

CHASE, J.    The defendants constitute the board of water commissioners of the city of Albany, and were appointed pursuant to chapter 304 of the Laws of 1892.    The plaintiff is the owner of certain premises in the city of Albany known as Nos. 40 and 42 John street.    There are two buildings on the premises, adjoining each other, one known as No. 40, and one as No. 42, John street. Prior to August, 1896, the premises Nos. 40 and 42 John street were supplied with water from the city mains.    There was but one service pipe or house connection between the water mains and these buildings.    There were water fixtures in both buildings, and they were each supplied by this one connection with the water main.    Prior to August, 1896, a water meter was placed on that supply pipe.    The evidence does not disclose whether the meter was located in the building No. 40 or the building No. 42 John street.    The meter registered 105,994 cubic feet of water as having passed through it between February 10, 1896, and May 15, 1896.    The rate charged for water where the amount exceeds one hundred and fifty gallons per day is six cents a hundred cubic feet, or eight cents a thousand gallons.    A bill was sent to and received by plaintiff's agent for the water supplied at Nos. 40 and 42 John street, as shown by the meter, amounting to $63.59.    The plaintiff had paid the annual water rents on the buildings, amounting for the time that the water had been measured by meter, to $10.50, and this amount was deducted from the bill so presented, leaving the net bill $53.09.    The plaintiff failed to pay the $53.09, and at some time prior to September 29, 1896, the defendants, in consequence of the failure to pay such bill, caused the water to be shut off from the plaintiff's premises, including both Nos. 40 and 42 John street.    All bills for special water rates and water rents are made out at the office of the board of water commissioners, and sent to the owner of the property.    Such bills are required to be paid at the office of the chamberlain of the city.    After receiving the bill, and on the 1st day of September, 1896, plaintiff's agent went to the chamberlain's office, but did not take with him the bill that had been presented to him.    He stated at the chamberlain's office that he wanted to pay for any special water tax—meter tax—that might be upon No. 42 John street.    He was told there was no such tax in the chamberlain's office.    He offered to pay any such tax, but did not make a formal tender, or in fact pay any amount whatever.    On the 15th day of September, 1896, plaintiff's agent went to the office of the superintendent of the waterworks, and stated, in substance, that he wanted to pay any special water-meter tax against No. 42 John street.    He was told that they could not furnish a statement against that house separately, and that it was impossible to subdivide the bill, because there was only one

meter and one supply pipe for both houses. He offered to pay any such tax, but did not make a formal tender, or in fact pay any amount whatever, and the same has never been paid. On the 29th of September, 1896, one Wilkinson, a duly-licensed plumber, in the interest of plaintiff applied to the superintendent of the waterworks for a permit to tap and make connection with the main or distributing pipe for the supply of water at No. 42 John street, which application was denied. This action was then commenced. Defendants are given certain powers by chapter 304 of the Laws of 1892, and that act also provides that the board of water commissioners of the city of Albany "shall have and exercise all the powers which are now, or heretofore have been, possessed or exercised by the board heretofore known as the 'Water Commissioners of the City of Albany.'" The water commissioners of the city of Albany then had power, and it was their duty, to "make such by-laws or regulations for the preservation, protection, and management of the said water works and the use and control of the water as may be deemed advisable, and which when ratified or approved by the common council shall have the same force and effect as any law or ordinance by them enacted." Laws 1850, c. 235, § 19. They were then required to "establish a scale of annual rents to be charged and paid annually for the supply of water or for benefits resulting therefrom to be called 'water rents,' and apportioned to vacant lots and the different classes of buildings in said city in reference to their dimensions, ordinary uses for dwellings, stores, shops, private stables and other common purposes, as near as may be practicable." Section 23, c. 235, Laws 1850, as amended by chapter 253, Laws 1854. Section 24 of chapter 235 of the Laws of 1850, as amended by chapter 253 of the Laws of 1854, provides that such regular water rents shall be collected from owners or occupants of all such buildings respectively, and also from the owners of vacant lots; and that such rents shall be, like state and county taxes, a lien and charge upon such buildings and lots. It is provided by section 25 of chapter 235 of the Laws of 1850, as amended by chapter 253 of the Laws of 1854 as follows:

"Hotels, factories, stables, and other buildings, establishments and trades which consume water beyond the quantity required for ordinary uses or common purposes as specified in the foregoing 23rd section shall pay therefor annually in advance to the chamberlain of the city as special rates in addition to the rents established by the scale aforesaid, such sum as the commissioners shall direct before any permit to use such extra quantity of water shall be given."

Section 29 of chapter 235 of the Laws of 1850 provides that "any violation of said rules and the observance of said rules may also be enforced by cutting off the use and supply of water." It is provided by section 5 of chapter 304 of the Laws of 1892 that the scale of water rates established by said board shall be general and uniform. It is also provided by the same section of the same chapter as follows:

"It shall be the duty of said board to take such action as may be practicable to prevent the waste of the city water by the consumers thereof and it or its

44 N.Y.S.—56

duly authorized agent or servants shall have the power and authority to inspect the plumbing and manner of use of the city water in any building or place to which it shall be supplied from the city mains."

The water commissioners have made certain regulations and by-laws, which have been ratified and approved by the common council, according to the provisions of the acts above quoted. Among such regulations and by-laws are the following:

"(7) Occupants of buildings assessed for annual water rents shall be allowed to use in and about their buildings 150 gallons of water daily for ordinary use, and not exceeding that quantity without a special permit.

"(8) * * * Or where there is an unnecessary waste of water, or more water is used in any building than is allowed by these regulations without a permit therefor, the occupant of the building shall be liable to a penalty of from two dollars to fifty dollars, to be fixed by the commissioners, and the superintendent in his discretion is authorized to shut off the supply pipe."

"(10) Whenever the superintendent shuts off the supply of water pursuant to these regulations he may restore the same upon the offender conforming to his directions in the matter and paying all expenses incurred. * * *"

Meters have been placed in the supply pipes to some of the buildings in the city of Albany, but not in all. Plaintiff insists that the use of meters in some, but not all, of the supply pipes to buildings in the city is a violation of the provision of section 5 of chapter 304 of the Laws of 1892, requiring the scale of water rates to be general and uniform. That meters are not placed in all supply pipes does not establish the plaintiff's contention that the water rates are not general and uniform. The regulations and by-laws adopted by the board and ratified by the common council are general and uniform. Under such regulations and by-laws each building on which the annual water tax has been paid is entitled to 150 gallons of water per day. The use of any more than 150 gallons per day at any building in the city is wrongful and unlawful. Brass v. Rathbone, 8 App. Div. 78, 40 N. Y. Supp. 466. That meters are placed in some of the supply pipes does not change the situation in the least. It is simply a means of determining whether an unlawful quantity of water is being used. If from the meter it appears that less than 150 gallons per day is being used, it does not affect the tax; and if from the meter it appears that more than 150 gallons per day is being used, the special tax is not created by reason of the meter, but by reason of the statute and the regulations and by-laws passed pursuant to the statute. If the owner or occupant of a building without a meter is using more than 150 gallons per day, the use is not the less unlawful by reason of the fact that a meter has not been placed on the supply pipe. If water is being used unlawfully, it can be shut off just the same whether a meter is being used or not. As it is very difficult to determine whether an unlawful quantity of water is being consumed without the use of a meter, the board of water commissioners, to determine whether exact justice is being done to all, should put meters in all supply pipes. This cannot be done throughout the city at the same moment of time, and, if improper motives influence the order in which meters are placed in supply pipes, it will have to be remedied in some other way, as it cannot be reached in this action.

The plaintiff further claims that she is entitled to the relief demanded for the reason that she has offered to pay any special water tax on No. 42 John street, and, as there is no supply pipe specially for that building, one should now be permitted, so that she can have the benefit of the 150 gallons per day to which she is entitled by reason of paying the annual tax. If plaintiff is entitled to tap the main for the benefit of No. 42 John street, she is equally entitled to tap the main for the benefit of No. 40 John street, and thus abandon the present supply pipe for both buildings, and avoid the lawful tax of $53.09, now existing against the two buildings. Plaintiff, having used the present supply pipe for at least 10 years, taking water in both houses therefrom, cannot now be allowed to complain if defendants require payment of the special tax in accordance with their regulations and by-laws before furnishing further water or allowing the main to be tapped for the benefit of either house.

The complaint of the plaintiff should be dismissed, with costs.